**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| **ROBERT S. SIEGAL** | * | **Case No. 17-15088-MMH** |
| **Debtor.** | * | **(Chapter 13)** |
| * * * * * * * | * * * * * * | |
| **ROBERT S. SIEGAL, Debtor** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Adversary No: 17-00348** |
| **LAWRENCE R. EVERETT, et al.** | * | |
| **Defendants.** | * | |
| * * * * * * * | * * * * * * | |

**DECLARATION OF DEBTOR ROBERT S. SIEGAL**

I, Robert S. Siegal, state as follows:

1. I am over the age of 18 and am competent to testify.

2. I am the Debtor in the above-referenced Chapter 13 proceeding and I am the plaintiff in the above-referenced adversary proceeding.

3. I have personal knowledge of all facts stated in this affidavit and would testify thereto.

4. Defendants Lawrence Everett ("Everett") and Farm Fresh Direct By A Cut Above, LLC ("Farm Fresh LLC") filed summary judgment motions on February 9, 2018 (Doc. 78), February 22, 2018 (Doc. 87), and May 14, 2018 (Doc. 115).

#3086736v.1

5.      On May 31, 2018, just three (3) business days prior to the hearing on Defendants'

summary judgment motions, Defendants filed the declarations of Lawrence R. Everett (Doc. 123

and 124) and Marios J. Monopolis (Doc. 125) in support of their summary judgment motions.

6.      Defendants' supporting declarations were filed <u>after</u> my oppositions were filed to

each of the summary judgment motions, and <u>more than three (3) months</u> since the first two of

Defendants' motions were filed.

7.      Pursuant to Judge Harner's oral ruling at the June 5, 2018 hearing, I submit this

declaration in further opposition to the Defendants' summary judgment motions.

Withholding of Pay

8.      I dispute Defendant Everett's allegations that he never threatened to withhold my

pay and never forced me to sign anything as a condition of being paid, as set forth at paragraphs

6-16 of his Declaration (Doc. 123).

9.      On May 2, 2017, I received an email from Al Fabian on behalf of Farm Fresh

LLC stating that:

> In consultation with corporate legal counsel and relevant state and federal
> authorities, we are required to have the attached employment contract and IRS
> form W-4. These forms need to be completed and returned by tomorrow noon.
> **No further paychecks will be issued until these documents are returned**
> **completed**. In addition, all payroll is now processed by our payroll service and
> will be by direct deposit only. Direct deposits will be made into your account
> each Friday.  (emphasis added).

10.     Included among the forms attached to the email was an "Employment Contract."

11.     A copy of the email and attachments is attached hereto as **Exhibit 1**.

12.     Defendant Everett was copied on the email and it was obviously was sent at his

instruction since he holds himself out as the general manager of Farm Fresh LLC.

2

#3086736v.1

13.     In addition to the May 2, 2017 email, Defendant Everett scheduled and conducted a meeting on May 5, 2017 at the Panera Bread in Rosedale at which time Defendant Everett held a check in his hand made payable to me for my earned sales commissions and told me that he would not give my check to me until I signed the "Employment Contract."

14.     Thus, Defendant Everett's allegation that he "never threatened to withhold the Debtor's pay or forced the Debtor to sign anything as a condition of the Debtor being paid" at paragraph 6 of his Declaration (Doc. 123) is nothing short of a known mistruth.

15.     I dispute Defendant Everett's allegations as to payment policies and advance payments to me, as set forth at paragraphs 8-16 of his Declaration (Doc. 123).

16.     From the beginning of Farm Fresh LLC through my ouster from the company in June 2017, there was no policy payment of sales commissions or sales manager compensation as alleged by Defendant Everett.

17.     Defendant Everett never mentioned or provided notice of any alleged policies for payment of sale commissions or sales manager compensation.

18.     Sales commissions were regularly paid to me upon completion of a sale, within days of delivery.

19.     Defendant Everett's chart at paragraph 11 of his Declaration (Doc. 123) is utterly flawed.

20.     Furthermore, on its face the chart does not include commission for sales dating back to March 8, 2017, and specifically as to the June 13, 2017 sale line item it impossible that the sale was made, delivered, and funded all one the same date.

21.      As to Defendant Everett's chart at paragraph 12 of his Declaration (Doc. 123), I was the only sales manager until my ouster from company and, therefore, there could not have

#3086736v.1

been a different policy in place for payment of the sale manager compensation other than what the actual payment practice was.

### Non-Disclosure Agreement

22.     I dispute Defendant Everett's allegations at paragraphs 17-21 of his Declaration (Doc. 123) as to the characterization of the Non-Disclosure Agreement ("NDA") entered into between Defendant Everett and I.

23.     Contrary to Defendant Everett's allegation that the "NDA does not contain any terms or provisions for compensation to the Debtor related to any information provided by the Debtor pursuant to the NDA" at paragraph 18 of his Declaration (Doc. 123), Section III of the NDA provides that in addition to injunctive remedies, "Owner (Debtor) shall not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages."

24.     Likewise, Section IV of the NDA provides that in the event of circumvention of the NDA, "Owner (Debtor) shall be entitled to any commission due pursuant to this Agreement or relating to such transaction."

25.     Defendant Everett has effectively circumvented the NDA by forcing me to sign the Operating Agreement and then making money from Farm Fresh LLC without compensating me and wrongfully removing me, a fifty percent (50%) owner, from the company.

26.     Furthermore, Sections IX and X of the NDA provide for recovery of costs associated with remedying any violations of the NDA.

### Operating Agreement

27.     I dispute the validity of the Operating Agreement.

28.     As Defendant Everett states in his Declaration (Doc. 123), Farm Fresh LLC was formed on December 22, 2016.

#3086736v.1

29.     At paragraph 25 of his Declaration (Doc. 123), Defendant Everett alleges that he did not sign the Operating Agreement until December 23, 2016.

30.     I did not execute the Operating Agreement signature page until sometime in March 2017, and my signature was not witnessed by Al Fabian.

31.     Until Defendants produced the Operating Agreement as an attachment to their filings in this case, I did not receive a copy of the Operating Agreement signed by Defendant Everett, nor did I receive a complete copy of the Operating Agreement when executing it.

32.     I refused to sign the Operating Agreement for more than two months, and in response to my refusal Defendant Everett repeatedly told me that I would not be an owner of Farm Fresh LLC until I signed the Operating Agreement.

33.     In his discovery responses, Defendant Everett claims he "provided $100 in capital to Farm Fresh" on January 19, 2017, nearly a month after he says he signed the Operating Agreement.

34.     Defendant Everett's discovery response as to his capital contribution references document production, but that document does not show that Defendant Everett made a payment of $100 on January 19, 2017.  (Bates number FARM FRESH 9-1).  This document was produced on February 23, 2018, after my opposition was filed on February 22, 2018 (Doc. 90) to the Defendants' summary judgment motion on this issue which was filed on February 9, 2018 (Doc. 78).

35.     Upon further review of more recent discovery produced by Defendants, it appears that Defendant Everett's alleged capital contribution was actually treated as a loan, with a "final payment on everett loan" in the amount of $2,500 on 06/05/2017 noted on the check register

5

(Bates number FARM FRESH 4-3).  This document was produced by Defendants on April 30, 2018.

36.     Defendant Everett repeatedly told me that he would be repaid out of the Farm Fresh LLC profits prior to anyone else being paid, and, therefore, Everett was repaid his upfront loans or contributions in March 2017, and certainly no later than June 5, 2017.

37.     Under Section 1.1.8 of the Operating Agreement, capital contributions include "any property (other than money)," such that my providing of intellectual property, including the business model and concepts provided pursuant to the NDA, more than satisfied any such capital contribution requirement on my part.

38.     To the extent the Operating Agreement is effective and also requires a specific $100 monetary payment, I am prepared and willing to make such payment and there is no deadline for such under the Operating Agreement.

39.     A $100 monetary payment was never mentioned nor requested from me by Defendant Everett or any other party.

<u>Defendants' Allegation of Competing Business</u>

40.     I dispute Defendant Everett's allegations as to any involvement on my part with "Farm Fresh Direct Home Food Services, LLC" (<u>FFDHFS</u>), as set forth at paragraphs 3-11 of his Declaration (Doc. 124).

41.     As I stated in my prior Affidavit filed with this Court on November 22, 2017 (Doc. 46-1, main case no. 17-15008):

   a)  Since the start of my employment with Farm Fresh Direct By A Cut Above, LLC ("<u>Farm Fresh</u>"), I have **not**:

6

    i.  Improperly disclosed confidential information acquired while at Farm Fresh to third parties;

    ii.  Improperly diverted sales proceeds owed to Farm Fresh;

    iii.  Improperly diverted sales commissions owed to other sales managers employed by Farm Fresh; or

    iv.  Conspired with a now-former Farm Fresh employee to create and establish competing home food services company and to violate the Lanham Act by naming the company "Farm Fresh Direct Home Food Services, LLC" (FFDHFS).

b) More specifically, I have had **no** participation in the formation, operation or otherwise of FFDHFS.

c) I have **not** met with Farm Fresh customers and induced them to cancel their orders with Farm Fresh and place new orders with FFDHFS, Passanante Home Food Services ("Passanante"), and/or other competitors.

42.    Each of the above statements remains true to date.

43.    I never met with Old Forge Funding, LLC or its principal in order to discuss FFDHFS or any other business matters, as Defendant Everett alleged on the basis of hearsay from Al Fabian at paragraph 7 of his Declaration (Doc. 124).

44.    Defendant Everett, on the other hand, continues to operate his other home food service company, A Cut Above, LLC ("ACA"), although such efforts by Defendant Everett would appear to be in conflict with his fiduciary duties under Section 5.7 of the Operating Agreement, which provides:

> **Notwithstanding anything to the contrary in this Agreement, the General Manager shall have a fiduciary duty to the Company and the Class A**

**Members**, and, pursuant to such duty, shall make all decisions and exercise all rights and powers granted by this Agreement (including, without limitation, the power to distribute Cash Flow and Capital Proceeds set forth in Section IV, and the power amend this Agreement set forth in Section 5.1.5) only in good faith and in a manner he reasonably believes to be in the best interests of the Company and the Class A Members.  (emphasis added).

45.     Based on the nature of the information provided to date through discovery by Defendants, I believe that Defendant Everett is conducting transactions through or in conjunction with ACA in order to make Farm Fresh LLC appear less valuable for his own financial benefit, including payment of ACA inventory with Farm Fresh LLC funds.

<u>Defendants' Allegations of Unsatisfactory Performance</u>

46.     I dispute Defendant Everett's allegations that my performance for Farm Fresh LLC was unsatisfactory, as set forth at paragraph 12 of his Declaration (Doc. 124).

47.     On the contrary, Defendant Everett repeatedly praised my sales and management efforts.

48.     I was the leading salesman for Farm Fresh LLC until Defendant Everett ousted me from the company.

49.     As the sales manager, I instituted and supervised the sale techniques and methods for Farm Fresh LLC, which continue to be used by Defendant Everett and Farm Fresh LLC.

50.     I never received any complaint from Defendant Everett or anyone else regarding my efforts for Farm Fresh LLC.

51.     Again, it was my intellectual property, including the business model and concepts provided pursuant to the NDA, that were used to create and operate the company, resulting in its initial and continued success.

#3086736v.1

Defendants' Unlawful Efforts to Oust Me from the Company

52.     I believe Defendant Everett's efforts to oust me from Farm Fresh were motivated by greed.

53.     While Defendant Everett alleges that the "primary reason for the termination of Debtor's employment was his involvement with FFDHFS and attempting to compete with Farm Fresh," such alleged conduct on my part – even though wholly untrue – would nonetheless be authorized by the Operating Agreement which Defendant Everett forced me to sign:

> 5.4.2 Except as otherwise expressly provided in Section 5.4.3, **nothing in this Agreement shall be deemed to restrict in any way the rights of the General Manager or any Member to conduct any other business or activity whatsoever**, and the Member or General Manager shall not be accountable to the Company or to any other Member with respect to that business or activity **even if the business or activity competes with the Company's business**. The organization of the Company shall be without prejudice to the General Manager's and each Member's respective rights to maintain, expand or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. The General Member and each Member waives any rights the General Manager or Member might otherwise have to share or participate in such other interests or activities of any other Member or any General Manager.

> 5.4.3 Each Member understands and acknowledges that the conduct of the Company's business may involve business dealings and undertakings with Members and Persons related to Members. In any of those cases, those dealings and undertakings shall be at arm's length and on commercially reasonable terms.

54.     Furthermore, the discovery produced by Defendants shows that there have been ongoing transactions between Farm Fresh LLC and Defendant Everett's separate home food service company, ACA, including from at least February 2017 through February 2018 (Bates number FARM FRESH 5-1).  This document was produced on April 5, 2018, long after my opposition was filed on March 8, 2018 (Doc. 99) to the Defendants' summary judgment motion on this issue filed on February 22, 2018 (Doc. 87).

55.     I find it untruthful that Defendant Everett's primary reason for terminating me was his concern with FFDHFS – which I had nothing to do with – because Defendant Everett was operating his own separate home food service company in addition to the home food service operations of Farm Fresh LLC, and Defendant Everett had forced me to sign an Operating Agreement that specifically allowed the members of the company to conduct competing businesses.

56.     Rather, I believe Defendant Everett saw an opportunity to take advantage of my financial misfortunes and attempted to take my ownership of Farm Fresh LLC on the basis he thought my bankruptcy filing authorized such.

57.     As Defendant Everett's attorney stated in open court, Farm Fresh LLC could be very well worth millions of dollars someday.

58.     In fact, based upon my review of the Defendants' discovery production, Defendant Everett and Al Fabian have increased their compensation from Farm Fresh LLC by at least 250% without any increase in work because another salesman that I hired took over the sales management efforts that I was handling and Defendant Everett's wife took over as show manager for Defendant Everett.  (FARM FRESH 14-1 through 14-23).

59.     Despite his repeated promises, Defendant Everett never gave me quarterly distributions on my ownership interests, presumably why he ousted me in June 2017 when my first quarterly distribution was coming due, and presumably why he increased his compensation so as to avoid characterizing his income as a distribution.

60.     Per Defendant Everett, my first quarterly distribution was to be $20,000, based upon a net income of $80,000, with half of that to be kept in the company and the other half to be split between the members.

#3086736v.1

Incomplete Company Information Provided by Defendants

61.     I dispute that the cost would be "well over $2,000" as quoted by Defendants' counsel in response to my requests for information production as a member of Farm Fresh, and, rather, I find that estimate to be excessively unreasonable and simply part of Defendant Everett's ongoing effort to lock me out of the company.

62.     Having participated in the operations of Farm Fresh LLC from its inception until being ousted from the company by Defendant Everett, I know that the information requested as to the company's business and financial condition could have been produced directly to me by way of e-mail at a very minimal cost.

63.     As Defendant Everett continues to operate another home food service business in addition to Farm Fresh LLC, and since the Operating Agreement Defendant Everett forced me to sign authorizes the members to operate competing businesses, I do not believe that Defendant Everett has any legitimate basis to argue that there are competition concerns that require limiting the production of information to me as a fifty percent (50%) owner.

64.     Although I had customer information when I was ousted from Farm Fresh LLC and I have since had to seek employment at a larger competitor of Farm Fresh LLC, I have not used any information obtained from Farm Fresh LLC.

65.     The discovery production received from Defendants and my current employer show that there is no overlap in customer sales.

66.     On the contrary, the Defendants' discovery production reveals transactions between Farm Fresh LLC and Defendant Everett's other business interests, and that is why have I sought discovery as to such transactions.

#3086736v.1

67.    Based on the conduct of Defendant Everett and his counsel in refusing to provide information and then quoting unreasonably excessive production costs, I believe further information requests outside of the discovery process would have been futile and cost-prohibitive.

<u>Concerns with Farm Fresh LLC Operations</u>

68.    Defendants' discovery production on May 29, 2018 – one week prior to the June 5 hearing and more than four (4) months after my discovery request was made – includes purchase orders that do not reference specific customers, rather only general "inventory" or no purchase order number at all.

69.    In my opinion, based on 7 years of experience in the business, this method of bookkeeping by Farm Fresh LLC prevents the ability to track food orders to customers, which is the crux of a home food service delivery business, and, rather, implicates that revenue is being hidden or diverted and expenses being exaggerated.

70.    The change from customer identifying purchase orders to non-specific purchase orders coincides with my ouster from the company, leading to my suspicion that there is fraud in the financial records, including the purchase of ACA inventory with Farm Fresh LLC funds.

71.    There are other alarming inconsistencies in the recordkeeping, including a balance sheet showing more than $45,000 in "inventory – food" when the storage space used by Farm Fresh LLC at the time could only store approximately $2,000 in food inventory.

72.    With growing concerns that Farm Fresh LLC was being mismanaged by Defendant Everett and Al Fabian, who Defendant Everett allowed to control the company's finances, I looked into Mr. Fabian's business history and discovered that Mr. Fabian had been found to have committed fraud, resulting in judgment for a non-dischargeable liability of more

#3086736v.1

than $3,000,000 by the United States Bankruptcy Court for the District of Maryland, on the basis of "actual fraud perpetrated by Fabian," including the "concealment of corporate assets" and "nondisclosure and outright perjury in the giving of false testimony and the filing of false and misleading financial statements." (Case No. 08-27450-JS, Adversary Proceeding No. 09-00443, Doc. 75).

73.     The Operating Agreement which Defendant Everett forced me to sign references DFS Consulting LLC at the title of Exhibits A, A-1, and B.

74.     My review of Defendants' discovery production provides that Farm Fresh LLC has paid DFS Consulting approximately $6,000.  (Bates numbering FARM FRESH 2-2)

75.     My investigation reveals that Mr. Fabian owns and/or operates DFS Consulting, and Defendant Everett told me that Mr. Fabian was involved in preparation of the Operating Agreement.

76.     In addition to my concerns with the financial recordkeeping, the fact that Mr. Fabian has been relied upon by Defendant Everett to assist in the operations of Farm Fresh LLC is very alarming.

77.     I have also surprisingly discovered that Mr. Fabian was identified as "MBR" (presumably member) on the IRS notice when Farm Fresh LLC's employment identification number was issued on January 3, 2017 (Bates Number FARM FRESH 2-13).

78.     I believe that appointing Al Fabian to a trusted financial role in Farm Fresh LLC and removing me as the top salesman and manager of the company amount to gross negligence on the part of Defendant Everett.

79.     I believe each of these facts are relevant to Defendant Everett's conduct in ousting me from Farm Fresh LLC.

#3086736v.1

I hereby state under the penalties of perjury that the foregoing affidavit and the facts set forth herein are true and correct and are based upon my personal knowledge.


/s/ Robert S. Siegal___    (original signature page follows)
Robert S. Siegal


06/19/2018_____
Date

14

#3086736v.1